Good morning, Your Honors. Good morning. My name is Neil Levine. I'll bend the rank and umbrella on behalf of the appellant. The trust for certain creditors of Consolidated Freightways. Your Honors, today's appeal relates to a very narrow issue under the Bankruptcy Code. And the nice thing about the appeal is that it does relate to very specific language of the Bankruptcy Code. And the interplay between two sections, I think, is critical for the analysis. Section 507A-5, used to be A-4, relates to the priority afforded to contributions to an employee-benefit plan. Employees is really the critical word. And the issue that we're dealing with is an issue substantially of first impression. There have been a couple of cases, none at the circuit level, that have dealt with this type of issue. The closest to the issue that we're dealing with is the Kraft's Precision case, which specifically addressed the question of whether retirees should be included within the definition of the term employees. From the debtor, the reorganized debtor standpoint, obviously we're dealing with a very critical issue because we have a pool of employees who are employed during the 180 days prior to the bankruptcy case, and we have a pool of additional retirees who existed during that 180-day period prior to the bankruptcy case. Well, let me ask you this. I mean, it seems to me on some level that, you know, it could be argued that employees is clear on its face and that Congress knows how to say retirees when they want to say retirees, and it would seem that the Supreme Court has been somewhat hostile to importing ERISA language into the Bankruptcy Code. Now, I mean, as the Supreme Court suggested in Howard Delivery, one of the main purposes of Section 507A5 is to capture employee fringe benefits accepted in lieu of wages. Why shouldn't retired employees' benefits be considered within the fifth level of priority, given these retirees were likely to offer more extensive retirement benefits in exchange for lower wages during active employment? Isn't this the type of fringe benefit contemplated by the Court in Howard? No, I don't think so, Your Honor. Okay. I think that Section 507 deals with priorities under the Bankruptcy Code that relate to the ongoing business of the debtor. If you look at Section 507 and the other priorities that are contained in Section 507, for example, second priority relates to goods and services that are provided to the debtor post-bankruptcy. There's a provision that deals with consumer deposits made to the debtor, the concept being that if a debtor is going to continue to operate, it has to give confidence both to its existing employees and to the marketplace that continuing to do business with the debtor will not result in being left with an unpaid claim. Retiree benefits, I think, are specifically dealt with in Section 1114, and, in fact, it goes so far as to define the term retiree benefits in Section 1114, and that includes health benefits provided to retirees, which is exactly the kind of benefits that Aetna says it provided here, services relating to retiree benefits for a health benefit plan. I think where Congress wanted to talk about retiree benefits, it knew how to do so. So under Section 507A5, if we follow the language of Howard Delivery, which suggests that the priority scheme should be very strictly and narrowly construed, I don't think you get beyond the concept of employee meaning what employee means. Employee means someone who's employed, who's rendering services to an ongoing business. If they want to. Well, but what if you ask someone, are you employed by this company, that would be someone that's employed right now. If you had retired from that company, you would say, no, I'm not employed by them, but I'm retired from them. I agree. So the employee doesn't necessarily encapsulate retiree. Well, I think the distinction that Your Honor draws is significant because I think you're right. If you asked whether you were employed by Consolidated Freightways, if you had retired from Consolidated Freightways, you'd say, no, I'm retired. The concept being that employee indicates a current employment status. I think to argue that it expands the universe of retirees, it could then extend to survivors of retirees, people who have inherited benefits under, you know, inheritance. It goes so far beyond the concept that's supposed to be embodied in Section 507 that it renders the priority meaningless. Well, it's tied to services rendered within 180 days, right? Correct, Your Honor. And that's the whole concept is that if you're going to remain as a current employee, you want to know that the wages that you've incurred prior to the bankruptcy filing are not in jeopardy. And we see this all the time in bankruptcy cases because one of the first things that you file in a bankruptcy case is a motion to honor the pre-petition payroll obligations post-bankruptcy. So the argument is that because these are priority wages, they're going to be paid in full if you're going to emerge from bankruptcy. So rather than have employees wait for that payment, typically speaking, a debtor files a motion to have those employee benefits paid immediately upon the filing of the bankruptcy case. That's typically a first-day motion that's filed in bankruptcy cases because maintaining employee morale and continued retention of employees is so critical to the ongoing functioning of the business. Your Honor, if you're correct, the way this would play out is people who retired 160 days before, their retiree contributions or whatever these are, contributions to the plan, they would get priority. 20 days worth of it would because the benefits that accrue after retirement don't fall within the definition of Section 507A5. So if it's accrued within the 180 days prior to the bankruptcy and it relates to employment activity, so in other words, if they worked during those 20 days during the 180-day period and then they terminated their service by retirement, then the following benefits after that 20-day period would no longer be subject to the 507A5 priority. That doesn't mean the claim goes away. The claim still exists. They have the right to payment from the estate, the same as any other general unsecured creditor. They don't get the priority. But they go down to, what, about seven or something as opposed to five? Well, they actually fall within the category of general unsecured creditors. So like wage claimants that have wages or vacation pay that's outside the 180-day limitation, even for current employees. If you're a current employee and you earned a vacation benefit 181 days before the bankruptcy case is filed, that one day of benefit is not covered within your priority. It doesn't mean the claim goes away. It just means that the benefit, the claim, drops down in priority to general unsecured. So, I mean, if I guess you're first arguing that the language is clear, but even if it isn't clear that still looking beyond that, you still prevail, and if Congress wants to fix this, Congress could fix it, and we don't, it's not our place to fix it? I think if you look at the legislative history of 507-A, what was then A-4, the concept was that this was intended to be in the nature of protection of a fringe benefit for people who were working for the business. You know, the concept being that pursuant to a collective bargaining agreement or otherwise, something is negotiated for employees in lieu of wages. So if the concept is wages, it's not the equivalent of retiree benefits. The concept is wages imply current services. And that's why I think the same thing is true if you look at the computation of the claims, which is one of our issues, and I realize the math aspect of it is the least gratifying to have to deal with, but when we talk about employees covered by such plan, the issue is whether we're talking about current employees or current employees plus retirees. The significance is that it would expand greatly the dollar amount of priority pool if you were to include retirees, thereby prejudicing the general unsecured creditors who fall lower in priority, so that now instead of being subordinated to, say, $15 million worth of claims, they're now subordinated to $50 million worth of claims if you include retirees. That wasn't the intent of Congress. I think the legislative history is clear. Your Honors, I wanted to also address the issue of the per-employee versus aggregate, but I see I have two minutes left and I want to reserve a little time for rebuttal. Thank you. Thank you much. Good morning, Your Honor. Robert Gebhardt, a law firm, a Sedgwick deedit, and Brandon Arnold on behalf of Apelli, Aetna. Your Honor, I just heard the argument and it repeats what's said in the brief. What they're missing here is the language of the statute. The bankruptcy court got it right in interpreting the statute in accordance with its plain meaning and enforcing the statute as it is written. How does the plain meaning, how does employee translate to retiree? They're different words. Well, Your Honor, the question that's raised here is employee benefit plan. That is what is given the priority. He focused on the word employee, but the question is employee benefit plan. The claim is for contributions to an employee benefit plan. It's very important that we focus on this because all discussion of employee and what it meant is trapped down in the very end of the statute. They're going to the very end and talking about how you calculate the cap, the actual allowed total group claim, and that's where you see the word employee. That's the amount of the claim after you determine entitlement. The Supreme Court was wrestling with the first part of the statute. That is, is a claim for employee competent, I mean, excuse me, is this an unsecured claim for a contribution to an employee benefit plan? The operative language is employee benefit plan. Well, do you agree, though, that we have to, that it seems to me that you want to import ERISA language to interpret the bankruptcy code, and that seems to be something that has, the Supreme Court has not favored. I know, Your Honor, we're not seeking to import any ERISA definition. We're saying that under the statute you first look at the contributions to an employee benefit plan. It makes no distinction between current employees, active employees, former employees, retired employees. The operative word is plan, not employee. Well, but it has to arise from services rendered within 180 days. That's right, Your Honor. Whose services are we talking about here? In our situation, we're talking about my client, Your Honor. Why wouldn't it be the employee's services? Again, if you look at the statute, it says arising from services rendered. All right. They could have said services rendered by an employee. That is correct, Your Honor. Or by an active employee. But then they could have, but then on the other hand, if you look at everything, it, you know, everything else, it looks like maybe it's a stretch to include you. Well, this is where it's very important to read Howard Delivery again, Your Honor. Because in that case, we had a carrier making a claim for premiums pursuant to workers' compensation program. And the Supreme Court looked at that and said, we don't think workers' compensation is an employee-fringed benefit. The court never for a second thought, well, but the carrier only has the claim for a premium, therefore it didn't provide any services rendered within the period. It was a given that the carrier making the claim had provided services within a priority period. And, in fact, in the dissent, Justice Kennedy picks up on this point. He makes the point, he says, the debtor argues that the carrier has no entitlement to a contribution claim because all they've done is provide services. And the majority rejected that. If that were the key answer, the Howard Delivery would be a one-page opinion, Your Honor. But instead they got into the question of, the first question, an employee benefit plan. What is that? And in this case, there's no question we have a health insurance benefit plan. And my client provided benefits, funded medical payments, administered the plan. So first we have a contribution. We're paying medical claims of employees, former employees, retired employees, current employees. Then we have the question of services. We administer the plan on behalf of the debtor. So we're actually reviewing the claims, determining coverage, paying the claims. Those are the services that the statute refers to. Let me get down to the bottom, the final part. So we've covered what claim, when the claim, what type of services, and we get into the amount of the claim. And there the statute focuses on covered employees, that is, people covered by the plan. And that includes all enrollees. There's no exception in here for, as I say, active employees. And it is an aggregate calculation. Again, the planning of the statute is aggregate. You take the total number of employees covered by the plan times the multiplier, and from that you deduct the aggregate amount paid. And when it says to any such employees, any such covered employees. An employee, you include the word, you include the concept of retired employees, is that correct, in your language? That is correct, Your Honor. In fact, another point they make is. . . An employee benefit plan that did not cover retired employees would still be an employee benefit plan, right? We're talking about a plan for employees, correct? We're talking about a health insurance plan for employees. That's correct, Your Honor. Correct. Now, as to retirees, they're no longer employees, are they? But they are covered by the employee benefit plan. They may be covered by a plan, but that doesn't mean that they are employees, does it? Well, again, if you. . . Doesn't? They are employees in the sense that they had an employee-employer relationship. No, they don't. They have a plan. . . They have a plan-retiree relationship, do they not? They have. . . They are now retired. That is correct. Indeed. Now, normally, I think the Supreme Court has said, and I think everybody using normal language thinks, normally, once you're retired, you're not an employee, right? Normally. Never mind the specific case. Just normally. Your Honor, what I would say is you are a retired employee. You are a retired employee. You're not a retiree. In fact, if you look at Section 114, it talks. . . It's actually entitled Retired Employees. So the idea there is that within the concept of employee, you have these former, current, and retired employees. So if somebody has been a teacher and is covered by state teacher's retirement, then that person, you would say, is an employee still. That person is an employee. They're not just a person getting money from state teacher's retirement because they retired. You would say, no, that's an employee. Correct? I certainly wouldn't say they're an employee for purposes of the Bankruptcy Code in terms of the wage priority, the 507A4. Excuse me. I would say they're not an employee for purposes of 507A4, which is the section above, which talks about payments to individuals who earn wages. So, yes, they're not earning wages any longer. So I would agree with that characterization. However. . . But when the Congress uses the word employee afterwards, it says now Congress means retired people. Correct? Well, again, Congress is not using the word employee to determine contributions to an employee benefit plan. The word there is plan. They're focusing at the bottom of the statute with regard to the aggregate amounts paid to covered employees. So the point there is, Your Honor, that the focus here is on the planning of the statute and how Supreme Court has dealt with it. And Howard Delivery only dealt with workers' compensation, and the question was fringe benefits. So you think when they get down to the cap, now they are talking about active employees. Is that what you think or not? The cap is having to do with first. So my question was, you think they are then talking about active employees? Or you think they're talking about retirees also? Subsection B2I. So B single I is all covered employees, all covered employees, which includes retired employees, former employees, et cetera. And then the next one? B2I refers to the last piece of it, amount paid to such covered employees. So within this universe of determining the calculation, if there are any amounts paid to the active employees under 507A4, which is the wage part of it, you deduct those from the total amount of coverage. So such employees now means active employees, correct? Such employees means such covered employees. Not such employees under the wage statute. It's not kicking back up to the wage statute for active wages. It's saying such covered employees under the plan. So the focus is on the plan, not the employee. Did I answer Your Honor's question on that? You answered my question. Thank you, Your Honor. So, again, just to touch on Howard Delivery, the Supreme Court was not adjudicating anything to do with retirement, how you calculate your claims. It was determining whether or not an employer's compensation is a fringe benefit. It also confirmed that insurance carriers who provide services to employee benefit plans are entitled to make such claims under 507A5. Now, the last piece of it is, again, construing all this language and making sure it's consistent throughout the Bankruptcy Code. Again, if you look at 507A4, which is the so-called wage earner priority, it is phrased as earned by individuals, earned by individuals. In contrast, that is 507A5, no such language by individuals. It's claims for contributions to an employee benefit plan. Finally, with respect to any discussion of interpreting the statute, there really are two points that the Supreme Court focused on. You have, one, treating similarly situated creditors the same, and you have, two, narrowly construing priorities unless they're clearly called for in the statute. And here, if you start picking and choosing among enrollees, you're violating that first principle. And then secondarily, you shouldn't construe the statute in a way in which you ignore the plain meaning. Thank you very much, Mr. Chief. Thank you, Your Honor. You've got about two minutes left. Thank you, Your Honor. Your Honor, I think this interpretation of the statute adds a word and takes out a word. The word they add is covered. There's nothing in the statute that says covered employees. It says employees. In addition, the word that they're reading out of the statute is such employees. It says in Section 507A5B, Romanette 2, the aggregate amount paid to such employees under Paragraph 4 of this title. What employees are they referring to other than the employees covered by Section 4? Section 4, as Counsel for Aetna has conceded, deals with active employees. The important distinction, Your Honor, is that retired employees is not defined in the Bankruptcy Code. Retiree benefits is defined in the Bankruptcy Code. So to the extent that Aetna would have the Court believe that what the Bankruptcy Code is intended to cover is employee benefit plans, I would recommend that the Court review Section 1114A, which defines retiree benefits, to include such plans. So where there was a distinction drawn between retiree benefits and covered employees, I think you have to recognize that Section 507A4 and 5 deal with the same people. They deal with active employees. Where retiree benefits are covered, it's covered in Section 1114A, the concept being you shouldn't mess with retiree benefits unless you follow this procedure outlined in Section 1114.  It just means the way you deal with contracts relating to retiree benefits is different. Lastly, Your Honors, I did want to address the per-employee versus aggregate ceiling. The one thing I'd like to offer as an example, because I think Aetna's interpretation of the statute gives the employee the greater of his actual out-of-pocket wages and benefits, or in this case, $4,650. If you simply take the number of employees, if we had 100 employees, and multiply it by $4,650, obviously you have a $465,000 priority pool. However, if any one of those employees has a wage claim which is less than the $4,650, so if I worked for the company, I had $1,000 worth of unpaid wages and $1,000 worth of unpaid employee benefits, I'm only entitled to a $2,000 priority claim. If Section 507A4 and A5 are read as being tightly linked, as the Supreme Court said they're supposed to be, in Howard Delivery, then I think you have to read that cap as being a per-employee cap, because I'm only entitled to a $2,000 priority. I get what I'm entitled to as a wage priority, and then I get what I'm entitled to as an employee benefit priority. I don't expand the world, the universe of priority claims, to now increase the benefit that's attributable to me from $2,000 to $4,650, as Aetna suggests would be the case. That would unfairly expand the priority pool in contravention of the strict construction of the priorities that are afforded under Section 507A. Thanks, Mr. Muir. Thank you. Mr. Chairman, thank you. This will be part of the case. I just argue to submit it with standing recess. Thank you. Thank you.
judges: Fernandez, Silverman, Callahan